UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALFREDO ESPARZA, SR.,<br><br>Defendant. | Case No. 1:07-cr-00294-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Defendant Alfredo Esparza's motion for compassionate release. Dkt. 101. For the reasons explained below, the Court will deny the motion.

## BACKGROUND

In February of 2009, Esparza pleaded guilty to charges of distributing methamphetamine near a school, unlawful possession of a firearm, and possession with intent to distribute methamphetamine. In his plea agreement, to avoid a possible mandatory minimum life sentence, he agreed to a sentence of 264 months imprisonment, followed by a lifetime of supervised release. In January of 2016, the Court reduced Esparza's sentence to 240 months imprisonment, followed by a lifetime of supervised release.

Esparza is now 70 years old and has served more than 146 months of his sentence. At the time of his sentencing, he suffered from type 2 diabetes and hypertension. He was also blind in one eye because of injuries suffered during a fight that occurred during a prior period of incarceration. His condition has deteriorated since his sentencing. In 2014 he had a heart attack, described in his medical records as "sudden cardiac death." In addition to the medical problems he had at the time of his sentencing, he now suffers from atrial fibrillation and stage 4 kidney disease. *See Req. for Comp. Release*, Dkt. 111 at 1–2. The BOP acknowledges that Esparza's medical needs require "active management" by a team of primary care physicians and specialists. *Id*. at 2. However, on May 20, 2019 the BOP denied Esparza's request for compassionate release because his medical conditions as assessed did not "substantially diminish [his] ability to function in a correction facility." *Defense Ex. B* at 2.

Esparza originally filed a motion for compassionate release with this Court on May 28, 2019. Defense counsel was appointed, and briefing was stayed until November 25, 2019. On March 20, 2020 Esparza submitted a time-sensitive supplemental brief in support of compassionate release, citing the threat of the COVID-19 virus in prisons and the potential he would suffer serious illness were he to contract the virus. *See Time-Sensitive Suppl. Brief*, Dkt. 120.

The government opposes the request, citing the seriousness of Esparza's offense, which it alleges took place against a backdrop of gang violence and drugs. *Reply in Opp.*, Dkt. 114 at 2. The government also points out that Esparza has never successfully completed a period of probation or parole and that he lacks the family support structure that might help him to succeed now. *Id.* at 3–4. Esparza's medical conditions, the government states, are stable and implicate no problems with self-care. *Id.* at 7–8. As to the COVID-19 virus, the government contends that the defendant's concerns are speculative because no one in the Esparza's facility has yet tested positive for the virus and he is actually safest in confinement because the BOP has been successfully managing the virus hazard. *Obj. to Suppl. Time-Sensitive Brief*, Dkt. 121 at 2–5.

## LEGAL STANDARD

Esparza brings this motion under 18 U.S.C. § 3582(c)(1)(A). A motion for compassionate release may be made by either the Director of the Bureau of Prisons or by a defendant who has fully exhausted administrative remedies within the Bureau of Prisons,[1] as Esparza has done. Accordingly, his motion is properly before the Court.

---

[1] Section 3582 was amended by the First Step Act of 2018, PL 115-391, Dec. 21, 2018, 132 Stat 5194. Prior to this amendment the Court could only reduce a sentence of imprisonment upon a motion of the Director of the Bureau of Prisons

In order to modify a sentence and grant compassionate release, a district court must engage in a three-step process. First, it must consider the 18 U.S.C. § 3553(a) factors. Second, the court must find that "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission has determined that "extraordinary and compelling reasons" to release a defendant from BOP custody include (1) medical conditions which diminish the ability of the defendant to provide self-care in prison, (2) age-related deterioration, (3) family circumstances, and (4) other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories.[2] USSG § 1B1.13. Third, the Court must find that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." 18 U.S.C. § 3582(c)(1)(A).

## ANALYSIS

**A.     Extraordinary and Compelling Reasons**

Esparza satisfies the "extraordinary and compelling reasons" prong of 18 U.S.C. § 3582(c)(1)(A) because of his age and underlying medical conditions. The

---

[2] U.S.S.G. § 1B1.13 has not been amended since the First Step Act to reflect that both defendants and the BOP may move for compassionate release. However, "courts have universally turned to U.S.S.G. § 1B1.13 to provide guidance on the 'extraordinary and compelling reasons that may warrant a reduction in sentence." *United States v. Gonzales*, WL 1536155 at *2 (E.D. Wash Mar. 31, 2020).

added danger COVID-19 infection poses to high-risk individuals like Esparza further amplifies those considerations.

Most clearly, Esparza satisfies the extraordinary and compelling reasons prong under the Sentencing Guidelines comment note 1(B): "Age of the Defendant." That provision states that age may constitute an extraordinary and compelling reason for release from BOP custody if the defendant is "(i) at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." USSG § 1B1.13 cmt. n.1(B).

Esparza meets each of these requirements. He is 70 years old. He has served more than 12 years in prison. And it is evident he is experiencing a serious deterioration in physical health as he ages. These factors are significant, and take on added weight because of the COVID-19 virus raging across the globe.

The CDC advises that those at the highest risk for severe illness from COVID-19 infections are "older adults and people of any age who have serious underlying medical conditions." CDC, *People who are at higher risk for severe illness*, COVID-19.[3] People aged 65 and older are more vulnerable to the virus. *Id.*

---

[3] *See* https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/people-at-higher-risk.html (last visited Apr. 3, 2020).

So too are those with any of a host of medical issues—including asthma and other lung diseases, heart conditions, severe obesity, diabetes, renal failure, and liver disease.[4] *Id*. People who are immunocompromised—from medical treatments, immune deficiencies, or other infections, for example—are likewise at greater risk for suffering serious complications from COVID-19. *Id*.

The danger of COVID-19 to high-risk individuals who are imprisoned is likely much greater than to those who are free to take their own protective measures.[5] Even in the best run prisons, officials might find it difficult if not impossible to follow the CDC's guidelines for preventing the spread of the virus among inmates and staff: practicing fastidious hygiene and keeping a distance of at least six feet from others. CDC, *What Law Enforcement Personnel Need to Know about Coronavirus Disease 2019, COVID-19*.[6] Though the BOP has implemented

---

[4] The CDC notes that this list of conditions will continue to evolve as it learns more COVID-19 cases in the US. https://www.cdc.gov/coronavirus/2019-ncov/faq.html#conditions (last visited Apr. 3, 2020).

[5] "Prisons are epicentres for infectious diseases because of the higher background prevalence of infection, the higher levels of risk factors for infection, the unavoidable close contact in often overcrowded, poorly ventilated, and unsanitary facilities, and the poor access to health-care services relative to that in community settings." Stuart A. Kinner, et. al., *Prisons and custodial settings are part of a comprehensive response to COVID-19*, THE LANCET (Mar. 17, 2020), https://www.thelancet.com/journals/lanpub/article/PIIS2468-2667(20)30058-X/fulltext.

[6] *See* https://www.cdc.gov/coronavirus/2019-ncov/community/guidance-law-enforcement.html. (last visited Apr. 3, 2020).

a COVID-19 Action Plan, which in recent days includes a 14-day in-cell quarantine,[7] the plan has obvious shortcomings: First, testing inside prisons has been scant except for people who self-report symptoms[8]— which means that statistics about the number of infections already in BOP facilities are largely meaningless. And second, the plan provides no additional protections for high-risk individuals like Esparza. As such, the combination of Esparza's age and deteriorating health might lead to serious complications or even death were he to contract COVID-19. The Court assumes that, despite the best efforts of BOP officials, the likelihood of contracting the virus is greater in prison than if a defendant were able to fully self-isolated at home.

    Less clear, is whether Esparza also satisfies the "Medical Conditions of the Defendant" provision of the Sentencing Guidelines under comment note 1(A). It provides that medical conditions constitute extraordinary and compelling reasons for compassionate release where the defendant suffers from a serious medical condition, or from deteriorating physical health due to aging, which "substantially diminishes the ability of the defendant to provide self-care within the environment

---

[7] *See* https://www.bop.gov/resources/news/20200313_covid-19.jsp (last visited Apr. 3, 2020).

[8] *See Coronavirus Disease Inmate Screening Tool*
https://www.bop.gov/coronavirus/docs/covid19_inmate_screening_tool_20200202.pdf (last visited Apr. 3, 2020).

of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13, cmt n.1(A).

The government contends, based on the BOP's denial of his request for compassionate release, that Esparza's medical conditions are well-managed and provide no barriers to self-care while in prison. *Reply in Opp.*, Dkt. 114 at 7–9. The presence of COVID-19, though, necessitates a more expansive interpretation of what self-care means. As noted previously, the prison environment prevents Esparza from being able to effectively self-isolate in the ways the CDC recommends for a person of his age and diminished health. In this moment, the inability for high risk individuals to fully self-isolate is an inability to provide self-care. So long as Esparza remains in custody, his capacity to protect himself from a serious, or even fatal, infection will be compromised.

Finally, comment note 1(D) of the Sentencing Guidelines provides that a court should also consider any other reasons—alone, or in combination with those already described—that may warrant compassionate release. USSG § 1B1.13, cmt. n.1(D); *see United States v. Gonzales*, WL 1536155 (E.D. Wash. Mar. 31, 2020) (finding compassionate release warranted under the "other reasons" category of USSG § 1B1.13, cmt. n.1(D)). This direction underscores that the Sentencing Guidelines are not to be read in isolation. Rather, the Court should consider a

defendant's entire circumstances. There is a substantial likelihood that, despite BOP's best efforts, the virus will continue to breach prison walls. This necessarily requires considering Esparza's motion in the context of the COVID-19 pandemic—that is, as a request from someone with multiple risk factors for complications from COVID-19 infection, confined in a prison environment where contagions are difficult to manage, and who is not at liberty to fully protect himself. For all of these reasons, Esparza's motion presents extraordinary and compelling reasons for compassionate release.

**2.     Sentencing Commission Policy Statements**

There are compelling justifications to grant Mr. Esparza compassionate release. However, there is a hurdle that he cannot clear. The Sentencing Guidelines instruct that a request for compassionate release may be granted if "the defendant is not a danger to the safety of any other person or to the community, provided in 18 U.S.C. § 3142(g)." USSG § 1B1.13. The Court cannot make that finding in Mr. Esparza's case.

The Court remembers Mr. Esparza's case quite well and, to avoid the possibility of a faulty memory, recently reviewed his presentence report. This was Esparza's 5th fifth drug trafficking conviction. He led a substantial drug trafficking organization, and firearms played a significant role in the crime. He had no

verifiable employment history of any kind, leading the presentence investigator to conclude that he maintained employment as an illegal narcotics distributor. Esparza had drug trafficking convictions at ages 23, 40, 44, 50 and 59. It would be foolish to assume that he is unlikely to return to peddling drugs at age 70.

Esparza argues that his current medical conditions reduce the risk of his returning to drug dealing. However, he committed his last drug trafficking offense while suffering from some of those same medical problems.

Nor does the Court find comfort in the fact that Esparza has completed rehabilitation programs while incarcerated and would be released to a lifetime of supervision. Esparza committed his 2nd, 3rd, and 4th drug trafficking offense while being supervised on parole. His 5th drug trafficking offense was committed a year after "topping out" his sentence on his 3rd and 4th trafficking offense. Obviously, neither community supervision nor prison treatment programs have had any deterrent effect on Mr. Esparza.

The Court cannot find that if Mr. Esparza, is released he would not pose a danger to the community. For that reason, and that reason alone, the Court reluctantly concludes that it cannot order Mr. Esparza's release.

## CONCLUSION

For the reasons stated above, Esparza's motion for compassionate release

must be denied.

**IT IS HEREBY ORDERED** that Defendant's Motion for Compassionate Release (Dkt. 101) is **DENIED**.

DATED: April 7, 2020

B. Lynn Winmill
U.S. District Court Judge